## In re PROFESSIONAL NURSES SERVICE, INC.

[719 A.2d 894]

No. 97-314

September 10, 1998. Professional Nurses Service, Inc. (PNS) appeals from a decision of the Commissioner of the Department of Banking, Insurance, Securities and Health Care Administration, which denied PNS's application for a certificate of need (CON) to offer a full range of nurse-aide and other therapeutic services. The CON is necessary for PNS to seek certification as a Medicare home health agency. PNS claims that the Commissioner erred by (1) failing to make findings of fact on whether a new home health agency is needed as a result of changes in the health care market, (2) concluding that PNS's proposal for a new home health agency is not consistent with the health resource management plan as required by 18 V.S.A. § 9437(5), (3) failing to comply with the timetable of the health resource management plan, and (4) failing to assert jurisdiction over other non-Medicare certified home health providers. We affirm.

The Vermont Legislature has provided that "[n]o new institutional health service shall be offered or developed within this state by any person, without a determination of need and issuance of a certificate of need by the commissioner . . . ." 18 V.S.A. § 9434(a). Among the purposes of the CON program are: to avoid unnecessary duplication of services, to contain the cost of services, and to promote a rational allocation of health care resources. *Id.* § 9431. In determining whether to grant a CON, the Commissioner must consider the general criteria set forth in 18 V.S.A. § 9436(a), and to grant a CON, the Commissioner must make the five findings required by 18 V.S.A. § 9437, sometimes called the mandatory criteria. The fifth of the mandatory criteria is the criterion relevant to this case. It provides that the proposed new service must be consistent with the health resource management plan. See 18 V.S.A. § 9437(5).

The health resource management plan is a plan for distribution of health services in Vermont. See 1991, No. 160 (Adj. Sess.), § 1, superseded by 1995, No. 180 (Adj. Sess.), § 11, codified at 18 V.S.A. § 9405. The 1996-1999 plan, applicable in this case, states that, to date, there are "no reliable measures for determining the need of Vermont residents for medically-necessary home health services." Vermont Health Care Authority, *Health Resource Management Plan 1996-1999* 115 (March 15, 1996). Nonetheless, "[c]ompared to other states, the cost per home health visit in Vermont is low, as is the cost per person." *Id.* The current Medicare data suggest "that the existing system is providing appropriate access at a reasonable cost." *Id.* Nonetheless, the plan notes, the Medicare payment system may change and managed care systems are emerging. See *id.* at 116. Consequently, the state should "determine at what stage it may be appropriate to allow additional home health agencies to operate in Vermont." *Id.*

Although the 1996-1999 plan contemplates additional home health agencies in the future, the intention is to support the existing home health agencies at this time, adopt standards to evaluate these agencies, and then examine their performance under these standards. See *id.* Moreover, an agency will be encouraged to remedy any problems discovered before any new home health agency is approved. See *id.* The plan calls for a work group to make recommendations for these standards and to be responsible for "continued examination of the Vermont's health care delivery system, including roles of managed-care organizations, nursing homes and hospitals, so that the authority can determine whether additional home health agencies may be appropriate." *Id.* at 117. A work group was established, but did not meet the December 31, 1996 deadline imposed by the plan, nor had it issued a report at the time of the Commissioner's decision in this case in July 1997.

PNS commenced this proceeding by filing a letter of intent under 18 V.S.A. § 9440(b)(1), requesting a determination of whether a CON was required for PNS to offer a full range of nurse-aide and other therapeutic services necessary to obtain Medicare certification. At the time, PNS was operating under a CON that limited the services that PNS could provide, preventing it from obtaining Medicare certification. The Commissioner determined that the proposed new services would require a CON review, and PNS submitted an application. The public oversight commission held a public hearing, at which PNS, the public, two interested parties — the Vermont Assembly of Home Health Agencies and Home Health Nursing Service, Inc. — had the opportunity to comment on and ask questions about the application. See 18 V.S.A. § 9440(c)(2) (public oversight commission shall hold public hearing if requested). The commission recommended that the Commissioner deny the application, which she did on the ground that the proposal for new services was inconsistent with the health resource management plan, and therefore, did not satisfy mandatory criterion (5). See *id.* § 9437(5). PNS appeals.

We presume an agency's interpretation of its regulations is correct. See *In re Verburg*, 159 Vt. 161, 165, 616 A.2d 237, 239 (1992). To overcome this presumption, the challenging party must show a compelling indication of error. See *id.* PNS argues that under the 1996-1999 plan, it may obtain a CON to operate a home health agency by showing changes in the health care market and consumer desire for a choice of providers. Neither showing would satisfy the 1996-1999 plan. Although the plan recognizes that the health care market is changing, and therefore, additional home health agencies may be appropriate at some point, it does not contemplate that changes in the market alone would support a CON for a new home health agency. On the contrary, the plan supports the existing home health agencies and recognizes that these agencies are providing appropriate access at a low cost in comparison to other states.

Both the 1996-1999 plan and the statute contemplate a showing of need in terms of cost and accessibility. See 18 V.S.A. §§ 9434(a) (no new health services shall be offered without a determination of need) and 9437(3) (commissioner shall not grant CON without finding patients would experience serious problems in terms of cost, availability or accessibility without the proposed service). Accordingly, the Commissioner did not err by failing to make findings regarding the evidence PNS presented on market forces and consumer choice because such findings would not satisfy the 1996-1999 plan in any event. For the same reason, we do not address PNS's claim that this is a contested case under the Administrative Procedure Act and that, therefore, the Commissioner was required to make findings on PNS's evidence concerning market forces. See 3 V.S.A. § 812. Further, the Commissioner did not err in concluding that PNS's proposal was inconsistent with the 1996-1999 plan.

The problem here is that PNS presents a policy argument for competition in the health care industry rather than presenting evidence of a consumer need due to high costs or gaps in service. The Legislature has, however, adopted a regulatory model to control costs and ensure accessibility, not a competition model. To the extent that PNS urges us to adopt a competition model, it is in the wrong forum. PNS's argument and evidence should be presented to the Legislature. The Department's role is to enforce the regulatory framework requiring a showing of consumer need.

Next, PNS argues that it has been

unfairly prevented from making a case that there is need for new providers because the work group failed to produce the evaluation standards by December 31, 1996 as required by the 1996-1999 plan. The timeline, however, was not mandatory; it was a target date and does not provide PNS with any remedy for untimeliness. Cf. *In re AssureCare of Vt., Inc.*, 165 Vt. 535, 542, 686 A.2d 959, 963 (1996) (statutory time period is not mandatory, but target date, unless provision specifies consequence for failure to meet deadline). We similarly dispose of PNS's complaint that the Department has been slow to collect the objective information to enable an applicant to show consumer need, which has made it impossible for PNS to demonstrate the need. The Department has no obligation, however, to help PNS collect data to make the requisite showing of need. PNS's application was simply premature if it wanted to rely on the work group's product to make its showing.

Finally, PNS contends that the Commissioner has discriminated against PNS by requiring it to obtain a CON in 1980 and in 1994 to offer limited services that do not qualify it for Medicare certification because, since 1996, the Commissioner has not required new home health care services to obtain CONs provided they do not offer the range of services that would allow them to seek Medicare certification. We do not reach this issue because it is not properly before us. None of the decisions concerning other health care providers are before us, nor are PNS's 1980 and 1993 CONs. This is an appeal from the denial of the 1997 application for a CON to provide home health care services that would allow PNS to obtain home-health-agency certification. PNS has demonstrated no compelling error in the Commissioner's decision to deny the CON.

*Affirmed.*