2008 VT 51

**VERMONT STATE EMPLOYEES' ASSOCIATION v. DEPARTMENT OF BANKING, INSURANCE, SECURITIES AND HEALTH CARE ADMINISTRATION**

[955 A.2d 504]

No. 07-204

¶ 1. April 15, 2008. Vermont State Employees' Association (VSEA) appeals from an administrative decision made by the Commissioner[1] of the Department of Banking, Insurance, Securities and Health Care Administration (BISHCA), granting the Vermont Department of Health (Department) a conceptual certificate of need for a new mental health facility in central Vermont. On appeal, VSEA argues that the Commissioner's

---

[1] The Commissioner appointed BISHCA's general counsel to act as the "Commissioner's Designee" because the Commissioner had a conflict of interest. In this decision, we refer to the designee as the Commissioner.

decision cannot stand because it was vague and ambiguous, as well as arbitrary and capricious. We disagree and affirm.

¶ 2. The facts of this case are as follows. The Vermont State Hospital (VSH) in Waterbury has been providing inpatient psychiatric care for 113 years. VSH employs approximately 170 state employees, including mental-health staff, administrative-services personnel, food-service workers, and custodial staff. The State's current inpatient-services system accommodates 117 psychiatric beds. Fifty-four of those beds are located in VSH in Waterbury, and the remainder are divided between Fletcher Allen Health Care, Central Vermont Hospital, Rutland Regional Medical Center, the Windham Center, and Retreat Health Center. VSH is the only hospital in the system that has a "no-reject" admission policy. This means that the hospital never refuses to admit a clinically eligible patient and often accepts transfers from other hospitals when a patient's needs exceed another facility's staffing capabilities.

¶ 3. In 2005, a report commissioned by the Legislature concluded that VSH should be closed. The parties agree with this conclusion. VSEA cites incidences of patient suicide, revocation of the facility's certification by the Federal Centers for Medicare and Medicaid Services in 2003, and failed inspections as additional evidence of the deteriorating conditions at the hospital.

¶ 4. Following the decision to close VSH, the Department began exploring options for its replacement. As an initial step, the Department was required under state law to apply for a conceptual certificate of need. 18 V.S.A. § 9434(b)(1), (c).[2]

_____

[2] The certificate of need statute requires an applicant to file a letter of intent for a conceptual certificate of need if its projected project costs exceed $30,000,000. If the conceptual certificate is approved, the

The Department filed a letter of intent for the conceptual certificate of need on Au-

_____

applicant will be granted expenditures to complete architectural, engineering, and planning services. After this work is completed, the applicant must apply for a certificate of need for approval of the proposed facility. VSEA's appeal in this case concerns the Department's application for the first of these two steps, the conceptual certificate of need. Section 9434 provides, in pertinent part:

> (b) A hospital shall not develop or have developed on its behalf a new health care project without issuance of a certificate of need by the commissioner. For purposes of this subsection, a "new health care project" includes the following:

> (1) The construction, development, purchase, renovation or other establishment of a health care facility, or any capital expenditure by or on behalf of a hospital, for which the capital cost exceeds $3,000,000.00.

> . . . .

> (c) In the case of a project which requires a certificate of need under this section, expenditures for which are anticipated to be in excess of $30,000,000.00, the applicant first shall secure a conceptual development phase certificate of need, in accordance with the standards and procedures established in this subchapter, which permits the applicant to make expenditures for architectural services, engineering design services, or any other planning services,

gust 15, 2006. The letter outlined a preferred option that would create fifty new inpatient beds in three locations to replace the fifty-four beds at VSH.[3] If this option were adopted, a new facility at Fletcher Allen Health Care in Burlington would contain forty new psychiatric beds, while expanding the capacity at Retreat Health Center in Brattleboro and Rutland Regional Medical Center would add another ten inpatient beds.

¶ 5. VSEA opposed the Department's preferred option because it failed to address whether VSH's current employees will have continued employment at the new facilities. VSEA also contended that the Department's proposal created the least number of inpatient beds and was more expensive than all other alternatives, including a proposal to replace the current facility with a new free-standing hospital in central Vermont. VSEA was granted interested-party status with respect to the conceptual certificate of need under 18 V.S.A. § 9440(c)(7).[4]

¶ 6. The Department's application was ruled complete on November 13, 2006. In December, BISHCA's Public Oversight Commission (POC) held a public hearing

on the application and subsequently issued its findings and observations on January 10, 2007. POC voted to recommend approval of the proposal but recommended a number of conditions on that approval. In its findings and observations, POC expressed concern about the Department's preferred option because it found that the costs approached $100,000,000, which "seems beyond the fiscal capability of the State of Vermont." A number of the POC's recommendations are worth noting here as they relate to VSEA's claims on appeal:

1. The [certificate of need] must explore and consider those alternative solutions for an inpatient psychiatric facility which provide a satisfactory and appropriate balance of the priorities of the Health Resource Allocation Plan and achieve the least capital and operating cost.

2. The [certificate of need] must review the need and include in the [certificate of need] proposal appropriate consideration for mental health treatment for inmates of the state correctional system. . . .

. . . .

4. The [certificate of need] must include sufficient research and analysis of systems in place or planned in other states to permit assessment of the effectiveness of the [certificate of need]'s preferred alternative.

. . . .

6. The [certificate of need] must provide a transition plan from the current to the planned facility which preserves to the extent reasonable the skills and capabilities already developed within the state's mental health system, including due consideration of

---

as defined by the commissioner, needed in connection with the project.

[3] The 2005 legislative report that advocated for the closure of VSH also recommended replacing the facility with fewer inpatient beds.

[4] Section 9440(c)(7) provides: "[f]or purposes of this section, 'interested party' status shall be granted to persons or organizations representing the interests of persons who demonstrate that they will be substantially and directly affected by the new health care project under review." We note that, while VSEA misidentified the statute as 18 V.S.A. § 9440(c)(6) in the record, we understand them to have been referring to the portion of § 9440(c)(7) quoted above.

retention of the current VSH workforce to address issues of continuance and quality of care.

. . . .

9. Interested parties should be permitted open, transparent and meaningful access to the [certificate of need] planning process to include their perspectives on the needs of their members, constituents, or those who utilize mental health services.

In general, POC was concerned that the preferred option would impose a high financial burden and wanted the Department to address whether the new facility would continue to provide psychiatric services that only VSH currently offers.

¶ 7. Under the certificate of need statute, the Commissioner is required to issue a notice of the proposed decision and give interested parties an opportunity to present new evidence if the decision "is contrary to the recommendation of the public oversight commission." 18 V.S.A. § 9440(d)(6)(B). On April 2, 2007, the Commissioner issued a notice of proposed decision, which the Commissioner said "may be contrary" to the POC's recommendations. VSEA promptly responded with its concerns. VSEA wrote: "[w]hile we support most of the decision and the reasoning behind it, we have several concerns." Generally, VSEA was concerned that the proposed decision seemed to endorse the Department's preferred option and did not specifically adopt the POC's findings and recommendations with respect to cost and staffing. A hearing was held on April 9, at which VSEA presented additional evidence and voiced its concerns about the proposed decision before the Commissioner.

¶ 8. On April 12, the Commissioner issued a final decision granting the conceptual certificate of need, to allow the Department capital costs up to $4,355,000 to undertake architectural, engineering, and planning activities. Specifically, the Commissioner instructed the Department to use part of the capital costs to analyze the feasibility of "multiple options and to develop detailed plans for the most feasible models." In the same section, the Commissioner granted the Department capital costs for planning expenditures associated with its preferred option. The decision then imposed the following conditions and requirements:

13. The planning activities authorized by this Conceptual Certificate of Need shall explore and consider those alternative solutions for an inpatient psychiatric facility which provide a satisfactory and appropriate balance of the priorities of the Health Resource Allocation Plan, and achieve the least expensive capital and operating cost. Consideration of alternative solutions shall include, if necessary to meet the Applicant's burden of proof, consideration of a replacement facility that is owned and/or operated by the State of Vermont.

14. The planning activities . . . shall review and include in the Phase II [certificate of need] application appropriate consideration of the need for inpatient mental health treatment for inmates and other offenders subject to the state correctional system, after giving due consideration for the overall mental health treatment capacity of the correctional system. . . .

15. The planning activities . . . shall develop information and analysis describing a long range perspective of the funding needs and sources of adequate funding for the inpatient facility and for

the community mental health system . . .

16. The planning activities . . . shall include sufficient research and analysis of systems in place or planned in other states to permit assessment of the effectiveness of the Phase II [certificate of need] plan's preferred alternative, and thereby permit the Phase II [certificate of need] review process to consider whether the Applicant has met its burden of proof with respect to the statutory criteria.

¶ 9. In the Statement of Decision released along with the final decision, the Commissioner addressed many of VSEA's arguments and proposals and explained:

VSEA has characterized the Notice of Proposed Decision as "adopting the claim that co-location with an academic medical center is the best solution and will afford the best care." The [Commissioner] concludes that no reasonable reading of the Notice of Proposed Decision, and especially a reading of the provisions of Condition No. 13, below, can so mischaracterize its intent and meaning. It will be the role and responsibility of the Applicant to consider all reasonable and appropriate alternative options for replacement inpatient services, after balancing many complex, difficult and competing factors and interests. In so concluding, this Statement of Decision should not be interpreted as pre-judging any particular alternative solution, nor as favoring or disfavoring the "academic medical center location" option.

The Commissioner also made clear that he considered and ultimately declined to attach a condition requiring the Department to retain current VSH staff. "Such a plan," explained the Commissioner "may, or may not be desirable, but requiring such a plan as a condition of the Conceptual Certificate of Need is beyond the lawful scope of the Commissioner's authority, and is an inappropriate exercise of the Commissioner's discretion in reviewing this application." VSEA filed a timely appeal in this Court.

¶ 10. On appeal, VSEA argues that the Commissioner's decision is vague and internally inconsistent. In support of this claim, VSEA points to portions of the final decision that purport to adopt the POC's findings and observations without attaching its conditions or recommendations. The decision has the effect, claims VSEA, of defeating "the recommendations of the POC while at the same time paying lip service to it." VSEA also argues that the Commissioner abused his discretion and acted arbitrarily and capriciously in rendering his decision. The State has responded to these claims and, in addition, has argued that VSEA lacks standing to bring this appeal under the certificate of need statute. Because we do not agree with VSEA's assessment of the merits, we decline to reach the Department's argument concerning standing.

¶ 11. We must emphasize at the outset the extraordinarily narrow scope of review that we apply in this context. See *In re Prof'l Nurses Serv*, 2006 VT 112, ¶ 12, 180 Vt. 479, 913 A.2d 381. We review appeals from decisions made by the Commissioner under 8 V.S.A. § 16. *In re Central Vt. Med. Ctr.*, 174 Vt. 607, 608, 816 A.2d 531, 535 (2002) (mem.). Under this section, we may disturb the Commissioner's decision if it: "(1) was issued pursuant to unconstitutional statutory provisions; (2) was in excess of statutory authority; (3) was issued on unlawful procedure; or (4) is not supported by substantial evidence in the record." 8 V.S.A. § 16. In recognition of the Legislature's broad delegation of authority under

§ 16, "we apply a highly deferential standard to decisions by the Commissioner." *In re Prof'l Nurses Serv.*, 2006 VT 112, ¶ 12. "[A]bsent a clear and convincing showing to the contrary, decisions made within the expertise of [the Commissioner] are presumed correct, valid and reasonable." *Id.* (citation omitted). Furthermore, we presume the Commissioner's interpretation of the Department's own regulations is correct and will not set aside the Commissioner's interpretation unless the challenging party can " 'show a compelling indication of error to overcome this presumption.' " *Id.* ¶ 13 (quoting *In re Central Vt. Med. Ctr.*, 174 Vt. at 609, 816 A.2d at 535).

¶ 12. We also note that we cannot engage in meaningful review of the factual basis of the Commissioner's decision because there is no evidence or contested-case record. Thus, as we said in *Professional Nurses Service*, 2006 VT 112, ¶ 16, the process does "not lend itself to meaningful judicial review." Finally, to narrow the significance of judicial review at this stage even further, we note that we are dealing with a form of preliminary approval. Thus, this decision does not determine finally the outcome of most of the issues before us.

¶ 13. VSEA claims that the Commissioner's decision should be overturned because it is vague and ambiguous. In support of this claim, VSEA points to several parts of the decision that it believes are internally inconsistent. First, VSEA argues that it is unclear what exactly the Commissioner's decision authorizes because it "alludes to the need for the applicant to undertake planning activities to include other options" while specifically authorizing the applicant to "expend monies only to develop its preferred option." Second, VSEA argues that it is unclear whether the decision adopts the POC's recommendations or if they are binding on the applicant. VSEA observes that the Commissioner specifically adopted the POC's findings and observations, without also adopting its recommendations. VSEA then points to latter parts of the Commissioner's decision that adopted "the findings of the Commission," including Finding 11, which makes it unclear whether the Commissioner has attached a condition or requirement.

¶ 14. While the Commissioner's decision is not a model of clarity, we do not think it is sufficiently vague or ambiguous to overcome our highly deferential standard of review. Specifically, we disagree with VSEA's initial claim that the Commissioner's decision is internally inconsistent in that it instructs the Department to consider other alternatives while at the same time endorsing the Department's preferred option. The Commissioner clearly states both in the final decision itself and in the Statement of Decision that the Department is required to consider alternative options. The fact that the decision also acknowledges the Department's preferred option does not negate the instruction to consider other alternatives, nor does it render the entire decision ambiguous or contradictory. As the Commissioner correctly observes, it is not his duty to "mandate a new health care project not proposed by the applicant." 18 V.S.A. § 9440(d)(5).

¶ 15. We also disagree that the decision is ambiguous because it claims to adopt the POC's findings and observations without also adopting its recommendations. We find no requirement in § 9440 that the Commissioner adopt both the POC's findings and recommendations. Section 9440(d)(6)(B)(i) simply instructs the Commissioner "fully [to] consider[] all the findings and conclusions of the public oversight commission." *Id.* § 9440(d)(6)(B)(i). Furthermore, § 9440(d)(5) provides:

> After reviewing each application and after considering the recommendations of the public oversight commission, the com-

missioner shall make a decision either to issue or to deny the application for a certificate of need. The decision shall be in the form of an approval in whole or in part, or an approval subject to such conditions as the commissioner may impose in furtherance of the purposes of this subchapter, or a denial.

*Id.* § 9440(d)(5). Contrary to VSEA's claims, it seems the statute gives ultimate decision-making authority to the Commissioner to adopt or ignore, in whole or in part, any of the POC's findings and recommendations. We therefore find that the Commissioner's adoption of the POC's findings but not its recommendations does not render the decision as a whole ambiguous.

¶ 16. Next, we turn to VSEA's claim that the Commissioner abused his authority by failing to provide the parties with notice of how his proposed decision differed from the POC's recommendations. Here, VSEA relies on the statutory requirement that the Commissioner must explain "why his or her proposed decision is contrary to the recommendation of the public oversight commission." *Id.* § 9440(d)(6)(B). VSEA argues that the Commissioner's decision was contrary to the POC's recommendations in a number of respects, but that the Commissioner failed to explain why he rejected the POC proposal. As an initial matter, we agree with the State that VSEA failed to preserve this issue below. Thus, we emphasize that we need not address VSEA's claims. See *In re Entergy Nuclear Vt. Yankee, LLC*, 2007 VT 103, ¶ 9, 182 Vt. 340, 939 A.2d 504.

¶ 17. Moreover, this is not an instance of fundamental unfairness. We have held that " '[n]otice is adequate in an administrative proceeding if the parties are sufficiently apprised of the nature of the proceeding so that there is no unfair surprise.' " *In re Central Vt. Med. Ctr.*, 174 Vt. at 611, 816 A.2d at 538 (quoting *In re Whitney*, 168 Vt. 209, 213, 719 A.2d 875, 878 (1998)). Our standard of review for such claims is settled:

> The question on review is not the adequacy of the original notice or pleading but is the fairness of the whole procedure. Critical to a determination of whether the procedure was fair is whether or not the parties were given an adequate opportunity to prepare and respond to the issues raised in the proceeding.

*In re Green Mountain Power Corp.*, 131 Vt. 284, 293, 305 A.2d 571, 577 (1973) (citation omitted).

¶ 18. While we agree with VSEA that the Commissioner failed to provide a separate, detailed statement describing how his decision differed from the recommendations of the POC, his decision did outline lengthy findings of fact and conclusions of law pursuant to § 9440(d)(6)(B)(i). Taken together with the Statement of Decision, which accompanied the final decision and explained at length why the Commissioner chose not to adopt some of VSEA's proposed conditions, the decision clearly met the statutory requirement for notice under § 9440(d)(6)(B). It is also clear that the parties were given adequate opportunity to prepare and respond to the issues raised by the proposed decision and that no unfair surprise resulted.

¶ 19. The Commissioner issued notice of his proposed decision in accordance with § 9440(d)(6)(A) on April 2, 2007. On April 9, VSEA responded with written notice of its concerns. That same day, the Commissioner held a meeting where all parties were permitted to present additional evidence and voice their concerns. VSEA attended and presented evidence. The Commissioner then issued his final decision promptly on April 12. In it, he

incorporated and addressed many of the concerns expressed at the April 9 meeting. We therefore hold that the procedure as a whole was fair and afforded the parties adequate notice.

*Affirmed.*