## In re Professional Nurses Service, Inc.

[671 A.2d 1289]

No. 94-456

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed January 12, 1996

*Philip H. White* of *Wilson & White, P.C.*, Montpelier, for Appellants/Cross-appellees Vermont Assembly of Home Health Agencies and its Constituent Members.

*Charles F. Storrow* of *Kimbell & Storrow*, Montpelier, for Appellee/Cross-appellant Professional Nurses Service, Inc.

*Robert A. Mello*, South Burlington, for Appellee Vermont Health Policy Council.

**Gibson, J.** The Vermont Assembly of Home Health Agencies and its thirteen constituent members (Assembly) appeal the Vermont Health Care Authority's denial of their petition to revoke the Certificate of Need (CON) issued in 1980 to Professional Nurses Service, Inc. (PNS). PNS cross-appeals the Authority's order requiring CON review of PNS's proposal for expanded services. We affirm.

Since 1979, "[n]o new institutional health service shall be offered or developed within this state by any person, without a determination of need and issuance of a certificate of need by the board . . . ." 18 V.S.A. § 9434(a) (formerly 18 V.S.A. § 2403(a)). In a February 1980 letter of intent to the State Health Planning and Development Agency (SHPDA), PNS proposed to "provid[e] the community of Burlington with an organized system of obtaining a Registered Nurse, a Licensed Practical Nurse or a nurse aide for private duty patients in the home, convalescent home or hospital," and to provide supplemental staffing for existing health care institutions. In April 1980, PNS applied for a CON to provide such services in Chittenden County. In an August 1980 addendum, PNS sought to expand its proposed service area to include "not only Chittenden County, but also the areas of St. Albans, and Barre/Montpelier." The Assembly was granted party status in the PNS CON proceeding in September 1980. Following a public hearing in November, the SHPDA on December 1, 1980 issued a CON to PNS.

The 1980 CON authorized PNS to offer "private duty nursing," "homemaking" and "supplemental staffing" services and did not restrict the scope of PNS's service area. The CON defined "homemaking" to include various nursing services provided at a patient's home, but expressly excluded "monitoring vital signs, range of motion

exercises, or supervision of medications." The CON did not define "private duty nursing" or "supplemental staffing."

In February 1992, PNS filed a letter of intent with the Commissioner of Health to offer "unrestricted" nurse aide services, including the monitoring of vital signs, range of motion exercises, and supervision of medication. PNS argued that the proposed expansion of its CON did not amount to a "material change" requiring CON approval under 18 V.S.A. § 9444. In a March 1992 letter, the Commissioner of Health notified PNS that the Legislature had transferred jurisdiction over CON applications to the Health Care Authority Board. See 18 V.S.A. §§ 9403(b), 9433(a). PNS interpreted this reply as a determination that its proposal required CON review, and in April 1992, appealed this determination to the Chittenden Superior Court. PNS also sought a declaration that the proposed expansion did not come within the Health Care Authority's CON jurisdiction.

In June 1992, PNS applied to the Department of Health for a CON to allow it to offer the additional services it had proposed. In December 1992, the superior court determined that the jurisdictional question should be decided by the newly established Health Care Authority. The Health Care Authority Board (Board) agreed to consider the jurisdictional issue once PNS completed its pending CON application.

In January 1993, the Assembly filed with the Board a "Petition to Revoke and Thereafter Reinstate with Additional Conditions the Certificate of Need of Professional Nurses Service, Inc." The Assembly alleged that PNS had unilaterally expanded its operation to include skilled nursing services offered on a statewide basis, and that PNS was therefore in substantial noncompliance with the 1980 CON.

In February 1993, the Health Policy Council (Council) determined that PNS's application for a second CON was complete, and in March 1993, PNS filed a motion to dismiss the Assembly's petition. The Board denied that motion, and held hearings on both the Assembly's petition and PNS's jurisdictional challenge on December 6-7, 1993. The hearing officer submitted recommended findings and conclusions to the Board in April 1994.

In response to PNS's jurisdictional challenge, the Board ruled that 18 V.S.A. § 9434 required PNS to obtain CON approval before offering expanded home health services. With respect to the Assembly's petition, the Board held that the 1980 CON was not meant to limit PNS in the types of skilled nursing services it could offer and that PNS's statewide expansion did not amount to substantial non-

compliance with the 1980 authorization. The Board also concluded that the Assembly was barred by laches from contesting PNS's geographical expansion. On July 28, 1994, the Board reissued the 1980 CON with revisions. The instant appeals followed.

Our standard of review is limited in cases involving an administrative agency's interpretation of statutory provisions that are within its particular area of expertise. Absent a clear and convincing showing to the contrary, decisions made within the expertise of an administrative agency are presumed correct, valid and reasonable. *In re UNUM Life Ins. Co.*, 162 Vt. 201, 206, 647 A.2d 708, 712 (1994). We will affirm a proper administrative decision even if the grounds stated in its support are erroneous. *Vermont Elec. Power Co. v. Town of Cavendish*, 158 Vt. 369, 374, 611 A.2d 389, 392 (1992). The Legislature has given the Board express authority for the administration of "[c]omprehensive health planning" in Vermont. 18 V.S.A. §§ 9401(a), 9404(a). Therefore, we will not disturb the Board's statutory interpretations absent a compelling indication of error. *UNUM*, 162 Vt. at 206, 647 A.2d at 711.

## I.

The Assembly claims that the Board erred in concluding that PNS was not in "substantial noncompliance" with the 1980 CON when it expanded to a statewide operation that provides skilled nursing services.

Under 18 V.S.A. § 9444, "[t]he board may revoke a certificate of need for substantial noncompliance with the scope of the project as designated in the application, or for failure to comply with the conditions set forth in the certificate of need granted by the board." The Board found that PNS's expansion beyond the geographical area it had proposed in the CON application placed PNS in "noncompliance with the scope of its designated project." The Board concluded, however, that the 1980 CON did not limit the geographical area in which PNS operated, but rather, restricted PNS from operating as a home health agency with access to Medicare reimbursement. Because the 1980 CON did not include a condition limiting the area of PNS's operation, the Board concluded that PNS's geographical expansion was not "substantial noncompliance" warranting revocation under § 9444. We agree.

Although the Board found that the Health Policy Corporation (HPC) (predecessor in interest of the Council) had used PNS's

proposed service area as the basis for determining the existence of need for the purposes of the CON, there is no indication that the HPC would have considered an expansion of that service area to be a substantial violation of the CON. The Commissioner's statements during the 1980 CON review indicate that the Department of Health was primarily concerned with the "accessibility, acceptability and flexibility of services" and less concerned with the potential for increased competition in the nursing industry. Undoubtedly, the statewide expansion of PNS services did in fact serve the purposes of the 1980 CON by increasing the accessibility, acceptability, and flexibility of nursing services. We see no compelling indication of error in the Board's interpretation of the term "substantial noncompliance" in § 9444.

## II.

The Assembly also claims that the Board erred in construing the term "private duty nursing" in the 1980 CON and in finding that PNS did not violate the terms of the CON by providing intermittent nursing services. The Assembly contends that, contrary to the Board's conclusion, the term "private duty nursing" is a term of art that restricted PNS to providing home nursing only in blocks of four or more hours; "intermittent nursing," according to the Assembly, is a distinct category of nursing services, which PNS was not authorized to provide under the 1980 CON. The Board construed "private duty nursing" to include nurses "hired by patients for both long and short blocks of time," and the term "intermittent nursing" to mean nursing visits in short blocks of time, usually less than two hours, a service that is covered by Medicare. But while the Board found that the terms had different connotations, the Board found no distinction in the types of services actually rendered. Stating that "nursing is nursing," the Board concluded that private-duty nursing and intermittent nursing are overlapping subsets of skilled nursing services and should be regulated the same way regardless of the source of their payment. In light of the deference we give to decisions made within the expertise of administrative agencies, see, e.g., *Vermont State Colleges Faculty Fed'n v. Vermont State Colleges*, 151 Vt. 457, 460, 561 A.2d 417, 419-20 (1989), we are unable to conclude that the Board misconstrued the term "private duty nursing."

The Assembly argues that the 1980 CON intended to protect home health agencies from competition for private insurance revenues paid for medically necessary nursing services by restricting PNS to the

provision of private-duty nursing in at least four-hour shifts. The 1980 CON did not, however, define the term "private duty nursing." The Assembly points to several statements suggesting that the length of PNS's proposed nursing shifts was one issue in the review of the 1980 CON application, but it fails to establish that the term "private duty nursing" required PNS nurses to work in four-hour shifts. In the absence of an express condition to that effect, we cannot conclude that the length of nursing shifts is a relevant criterion in defining the term "private duty nursing" as it was used in the 1980 CON. Nor are we persuaded that the 1980 CON intended to restrict competition between PNS and home health agencies, inasmuch as the Commissioner was aware at the time of issuance that the CON was likely to result in increased competition between PNS and the Assembly.

It is true that, in enacting the Health Facility Planning Act, the Legislature expressed its intention to provide new institutional health services "in a manner which avoids unnecessary duplication." 18 V.S.A. § 9431. That was not, however, the sole purpose of the Act. The Legislature also sought to contain or reduce cost increases in the delivery of health services while maintaining and improving the quality of and access to such services. *Id.* Although the Board's decision may increase competition among nursing providers in Vermont, the decision also furthers other purposes of the Act. Under these circumstances, the agency's decision must stand. See *UNUM*, 162 Vt. at 206, 647 A.2d at 712.

## III.

The Assembly also claims that the Board exceeded its statutory authority when it used the 1994 CON to redefine "private duty nursing," as that term was used in the 1980 CON, and to expand the geographical scope of PNS services beyond that proposed in the 1980 CON application. The Assembly argues that, under 18 V.S.A. § 9444, the Board has authority only to grant or deny the revocation of a CON, and not to clarify or modify a material term of an existing CON.

■ We have recognized, however, that "'[t]he powers of an administrative agency must be construed to include such incidental, implied power as may be needed for the agency to achieve the task assigned to it.'" *Id.* at 205, 647 A.2d at 711 (quoting *In re DeCato Bros., Inc.*, 149 Vt. 493, 495, 546 A.2d 1354, 1356 (1988)). The Health Facility Planning Act provides that proposals "to materially change the scope . . . of [an] approved project . . . are subject to review

under this subchapter." 18 V.S.A. § 9444. The Board needed to clarify the scope of the 1980 CON to determine whether PNS was in compliance and whether the proposed change was material. We hold, therefore, that the power to clarify an existing CON is one of the implied powers necessary to carry out the Board's statutory authority.

The Board also had the authority to issue the revised 1994 CON. The statute authorized the Board to review the PNS proposal once it concluded that PNS proposed to make a material change to the 1980 CON. *Id.* The Board's review power includes the power to issue or deny certificates of need under 18 V.S.A. § 9433(a). The Assembly concedes that the Board followed the appropriate procedure when it issued the 1994 CON to PNS. As long as the Board followed proper statutory procedure, we see little difference between revising and reissuing the 1980 CON on the one hand, and issuing a separate CON on the other.

## IV.

On cross-appeal, PNS claims that the Board erred in requiring CON review of PNS's proposal to offer unrestricted nurse aide and other therapeutic services. It argues that the proposal did not constitute a "material change" of the 1980 CON, and therefore, did not require separate authorization. Here again, we will sustain interpretations of statutory provisions by an administrative agency in the absence of compelling indication of error. *UNUM*, 162 Vt. at 206, 647 A.2d at 711.

The applicable statute states, "If a change itself would be considered a new institutional health service as defined in section 9434(a) of this title, it shall be considered as material." 18 V.S.A. § 9444. Section 9434(a)(1) defines "new institutional health service" as "the construction, development, or other establishment of a new health care facility." The term "health care facility" includes "home health agencies." 18 V.S.A. § 9432(10). Although "home health agency" is not defined in the statute, the Board determined that, since the early 1970s, the phrase had meant the same thing to those responsible for CON review in Vermont as it did to those responsible for administration of the federal Medicare reimbursement program, namely, "the offering of skilled nursing services plus at least one other therapeutic service." See 42 C.F.R. § 484.14(a). Because PNS proposed to offer unrestricted nurse aide services and other therapeutic services, the

Board concluded that PNS intended to make a material change in its 1980 CON authorization. We see no reason to disturb this conclusion.

PNS asserts that the definition of "home health agency" adopted by the federal Medicare program is not a sufficient basis for concluding that PNS sought a material change of the 1980 authorization. We disagree. Without explaining how the Board's interpretation is deficient, PNS invites us to substitute PNS's definition for that of the agency authorized to interpret the applicable statute. We decline such invitation and uphold the Board's interpretation in the absence of a compelling indication of error.

*Affirmed.*