STATE OF VERMONT

SUPERIOR COURT                                        ENVIRONMENTAL DIVISION
                                                        Docket No. 129-10-16 Vtec

| | |
|---|---|
| Four Hills Farm Partnership Amendment | |

## Decision on Cross Motions for Summary Judgment

Four Hills Farm Partnership appealed certain conditions included in its Large Farm Operations Permit Amendment that was issued by the Vermont Agency of Agriculture, Food & Markets ("Agency" or "AAFM") on September 16, 2016 for a dairy farm in Bristol, Vermont. Cross motions for summary judgment are now before the Court.

Four Hills Farm ("Four Hills" or "Appellant") is represented by Kevin T. Brennan and Joan Donahue, Esqs. AAFM is represented by Melanie Kehne and Thea J. Schwartz, Esqs. The parties' filings and replies were completed on May 16, 2017.

For the reasons set out below, we **GRANT** Four Hills' motion for summary judgment and **DENY** AAFM's motion for summary judgment. The consequences of our determinations are noted in the Conclusions section of this Decision.

## Standard of Review

We begin our analysis with the established standard that summary judgment may only be granted when the moving party shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." V.R.C.P. 56(a) (applicable here through V.R.E.C.P. 5(a)(2)). The moving party shows that no material fact is in dispute principally by filing a statement of undisputed facts supported by materials in the record. V.R.C.P. 56(c)(1)(A).

In reviewing a motion for summary judgment, the Court: 1) accepts as true any factual allegations made in opposition to the motion by the non-moving party that are supported by affidavits or other evidentiary material; and 2) gives the non-moving party the benefit of all reasonable doubts and inferences. Robertson v. Mylan Labs., Inc., 2004 VT 15, ¶ 15, 176 Vt. 356 (internal citation omitted). If an assertion of fact is unchallenged, the Court may consider the

fact undisputed. V.R.C.P. 56(e). Nevertheless, the moving party still "must demonstrate the absence of a genuine issue of material fact and entitlement to a judgment as a matter of law." In re Pixley, No. 2004-477, slip op. at *2 (Vt. June 2005) (unpub. mem.) (citing Miller v. Merchants Bank, 138 Vt. 235, 237–38 (1980)).

When, as here, "there are cross-motions for summary judgment, both parties are entitled to the benefit of all reasonable doubts and inferences" when being considered as the non-moving party. Vermont Coll. of Fine Arts v. City of Montpelier, 2017 VT 12, ¶ 7 (Vt. Feb. 10, 2017) (citing Montgomery v. Devoid, 2006 VT 127, ¶ 9, 181 Vt. 154). The applicable law governing the case helps determine what facts are material and necessary to resolving the legal issues presented. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986) (citing *C. Wright, A, Miller & M. Kane, Federal Practice and Procedure* § 2725 pp. 93–95 (1983)). Factual disputes that do not affect the outcome of the necessary legal determinations will not "preclude the entry of summary judgment." Id. We review the facts and legal precedent asserted by each party with these standards in mind.

**Factual Background**

The parties disagree on the interpretation of some facts, as well as presenting some alternate facts, but do not dispute any material facts. The following list of material facts has been culled from the parties' motions, exhibits, and affidavits, and are recited here solely to decide the pending motions for summary judgment.

1.     Four Hills is a Large Farm Operation ("LFO") in Bristol, Vermont that is subject to 6 V.S.A. Subchapter 4 (regulating LFOs), 6 V.S.A. Subchapter 2 (Required Agricultural Practices and Best Management Practices), and the Large Farm Operations Rules ("LFO Rules") promulgated by the Agency pursuant to 6 V.S.A. § 4852.

2.     Four Hills is subject to LFO Permit #2000-04-A1 issued by the Agency on October 2, 2007.[1]

3.     Four Hills submitted application materials to amend its LFO Permit to the Agency in February and July of 2014.

---

[1] The LFO Permit issued in October 2007 to Four Hills (#2000-04-A1) was actually an amendment to an earlier LFO Permit (#2004-04). The parties appear to agree that the earlier Permit is not material to the legal issues presented in this appeal.

4.      A public informational meeting regarding Four Hills's proposed expansion was held by the Agency on October 15, 2014.  Appellant's Ex. 3.

5.      In December 2014, Four Hills submitted additional application materials, which included an expansion in animal numbers over the previous materials.

6.      Four Hills submitted a revised LFO permit amendment application to the Agency in March 2015, which further expanded the animal numbers.

7.      Jonathan Chamberlain, on behalf of Four Hills, sent an email to the Agency's LFO program manager, Katie Gehr, on August 20, 2015 requesting feedback on the revised application.  Appellant's Ex. 4.

8.      On September 4, 2015, Ms. Gehr sent an email to representatives of Four Hills, including Mr. Chamberlain, requesting additional information.  She stated that "[s]ubmitting this information will complete your application, enabling the Agency to complete the review of the application to amend the LFO Permit."  Appellant's Ex. 5.

9.      On September 8, 2015, Appellant responded to Ms. Gehr's request for additional information.  Appellant's Ex. 5.

10.     Ms. Gehr acknowledges that she received the additional information that Four Hills submitted, but asserts that one item delivered didn't contain all the information requested.  Ms. Gehr did not inform Four Hills representatives of their filing deficiency.

11.     On October 30, 2015, Nathaniel Sands, an AAFM agriculture water quality supervisor, sent an email to Chanin Hill, a representative of Four Hills, that stated "We are currently reviewing a draft permit amendment . . . ."  Appellant's Ex. 6.

12.     On January 14, 2016, Mr. Sands sent Mr. Chamberlin a "final draft" of the permit amendment "that is prepared for the Directors to review."  Appellant's Ex. 7.

13.     On or around April 6, 2016, the Agency sent Four Hills a letter stating that the Agency was unable to approve requests for permit amendments at that time.  This statement appeared to be general in nature and not directed to Four Hills's specific permit amendment application.

14.     Agency staff met with Four Hills representatives on June 16, 2016 to discuss its March 2015 revised permit amendment request.

15.     The Agency issued to Four Hills LFO Permit #2000-04-A2 dated September 16, 2016 (hereinafter referred to as the "Paper Permit").  The Paper Permit includes conditions that were

not part of Four Hills' application, and were not part of the January 2016 final draft permit amendment prepared and forwarded to Four Hills by Mr. Sands. Those conditions require Four Hills to hold another public informational meeting in coordination with the Agency prior to the construction of any additional animal housing; to develop and implement a plan for odor, noise, traffic, and pests; and to develop and implement a stormwater management plan to minimize the adverse impacts of stormwater runoff to surface waters.

16. At no time did the Agency provide prior notice to or an opportunity for Four Hills representatives to offer comment or criticism to the conditions that the Agency included in the Paper Permit.

17. Both the "draft" amendment sent to Four Hills in January 2016 and the "final" permit issued eight months later allow Four Hills to more than double its herd from 1,850 mature cows to 2,850, and from 600 youngstock or heifers to 2,450. To accommodate the additional animals, Four Hills plans to add three new barns and other facilities.

### Discussion

Four Hills first argues that its permit amendment application submitted in September 2015 was deemed approved due to Agency inaction prior to the issuance of the Paper Permit by AAFM in September 2016. As a result, Four Hills contends the latter permit amendment is invalid. Appellant's second argument is that if in fact the latter permit is valid, then the condition requiring a public informational meeting should be struck since a meeting was already held. Their third and final argument is that if the latter permit is valid, then the condition requiring Appellant to develop and implement a stormwater management plan should be struck because 1) the rules in effect when the Appellant submitted its application did not require stormwater management plans; and 2) AAFM did not at that time have the statutory and rulemaking authority to regulate stormwater management. Four Hills specifically argues that any new rule requiring large farms to develop and implement stormwater management plans must first be promulgated in accordance with the Vermont Administrative Procedure Act ("VAPA") before such a condition is included in its LFO permit amendment.

Four Hills sets out these issues in its Statement of Questions, pursuant to V.R.E.C.P. Rule 5(f). The questions, as paraphrased, are:

-4-

1. Whether AAFM's failure to issue a permit determination within 45 business days resulted in the amendment application being deemed approved.

2. Whether, because the amendment application is deemed approved, the Paper Permit issued by the Agency in September 2016 is invalid.

3. Whether, if the September 2016 permit is valid, the condition requiring a public informational meeting should be stricken.

4. Whether the conditions requiring Four Hills to develop and implement a plan for odor, noise, traffic, and pests, and another for stormwater management, should be stricken if they would not have been added to the permit had it been timely reviewed and issued.

The Agency initially appears to contest that Four Hills Farm is entitled to deemed approval of the revised permit amendment application it submitted in March 2015 and supplemented with additional materials on September 8, 2015. We address this legal dispute in the first subsection, below.

Secondly, the Agency appears to argue that, under its regulations, it may treat deemed approved permits—or permits awarded by default—differently from permits issued through the proper procedures. According to the Agency, it can condition deemed approved permits without giving the permittee notice and an opportunity to be heard. In addition, the Agency argues that the conditions placed on the permit without notice or hearing are valid. The Agency further offers that the public information meeting requirement is valid because Four Hills' application changed substantially after the first meeting, and the requirement to develop and implement a stormwater plan is valid because the Agency interpreted the state's agricultural water quality laws as requiring the condition, and the interpretation warrants the Court's deference.

I.     **Whether the Permit Amendment Application was Deemed Approved**

The deemed approval remedy for an application submitted for an LFO permit is established by 6 V.S.A. § 4851(c), which states:

> The Secretary shall approve, condition, or disapprove the application within 45 business days of the date of receipt of a complete application for a permit under this section. Failure to act within the 45 business days shall be deemed approval.

The deemed approval remedy is also codified in the Agency's regulations. Under the LFO Rules, the Secretary is required to notify the applicant in writing as to whether the AAFM and the

Agency of Natural Resources have determined the application is administratively complete or administratively incomplete.  2-3 Vt. Code R. § 403:5(B)(4)(a).  The rules further state:

> b. An incomplete application shall not be deemed complete until the identified items or components are submitted.
>
> c. . . .
>
> d. Title 6 Chapter 215 4851(c) states that the Agency has 45 business days to review an application once it is fully complete.
>
> e. The formal 45 business day application review period will not start until the Agency determines that the application has been considered administratively complete, the application review advisory group has met and provided feedback (where required by statute),[2] and the public informational meeting has been held.  The day after the application is deemed complete is day 1 of the statutory 45 business day review period.

2-3 Vt. Code R. § 403:5(B)(4)(b), (d), and (e).

Neither the Vermont Supreme Court nor this Court has considered the deemed approval remedy in relation to LFO permits.[3]  We instead use the case law in the municipal land use context by analogy.  In that context, the Supreme Court has taken a conservative approach in applying the deemed approval remedy.  Because a deemed approved permit may be at odds with the law, the Court has cautioned against extending the remedy beyond its statutory intent, which is to "eliminate deliberate or negligent inaction by public officials."  In re Morrill House, 2011 VT 117, ¶ 8, 190 Vt. 652 (citing In re Ashline, 2003 VT 30, ¶ 13, 175 Vt. 203).  The Supreme Court has refused to apply the deemed approval remedy in cases where the decisions were timely made, but technically deficient or insufficiently noticed.  See id. at ¶¶ 10–11; see also In re Appeal of Newton Enterprises, 167 Vt. 459, 463, 465 (1998).  It has applied the remedy where an untimely decision resulted from protracted deliberations.  In re McEwing Servs., LLC, 2004 VT 53, ¶ 21, 177 Vt. 38.  In those instances, "deemed approval occurs by operation of law, and requires no action on the part of the applicant."  Id. at ¶ 18 (expressly rejecting the trial court's holding that an

---

[2] Neither party mentions the application review advisory group in its filings.  Under 6 V.S.A. § 4853(a), the AAFM Secretary is required to establish an advisory group to assist in reviewing the application for a new barn under an LFO permit.  "The advisory group shall consist of, in addition to the secretary, the secretary of natural resources or his or her duly authorized representative, a farmer appointed by the governor, and a representative of the legislative body of the municipality in which the proposed facility would be located."  Id.

[3] This Court has heard only three prior LFO permit appeals.

applicant was not entitled to the deemed approval remedy because it had not actively requested a timely decision or objected to delays).

In this case, the undisputed facts cause us to conclude that AAFM did not make a timely decision on Four Hills' complete application for an amended LFO permit. We have concluded that Four Hill's application was or should have been deemed complete because of several undisputed facts. In an email to Four Hills, Ms. Gehr on behalf of AAFM advised that the application would be deemed complete once Four Hills provided the information she requested; Four Hills did so on September 8, 2015. While Ms. Gehr now represents that one of Four Hills's responses was incomplete, she did not advise Four Hills at that time of this supposed deficiency and never requested the information she now represents was lacking. In fact, without requesting and receiving further information, AAFM later acted on Four Hills application. We must conclude that at that time, AAFM regarded Four Hills's application as complete. AAFM's inaction therefore caused the permit amendment application to be deemed approved without any conditions.

The overall timeline of events is also uncontested. Four Hills submitted its revised application for an LFO permit amendment on March 17, 2015. The Agency did not notify Four Hills as to the status of its application until nearly six months later, after Four Hills inquired about it in an email on August 20, 2015. Appellant's Ex. 4. Ms. Gehr's reply, emailed on September 4, 2015, requested additional information, adding that "submitting this information will complete your application enabling the Agency to complete the review of the application to amend the LFO Permit." Appellant's Ex. 5. Four Hills submitted the requested information on September 8, 2015. On October 30, 2015, Mr. Sands on behalf of AAFM sent an email to Four Hills advising that the draft permit amendment was under review. Mr. Sands then sent a draft permit to Four Hills without conditions on January 14, 2016. Mr. Sands said in an affidavit that the draft permit amendment was for the first phase of Four Hills' permit amendment request, but provides no explanation for this limitation or its relevance to the deemed approval analysis. Nearly eight months later, on September 16, 2016, the Agency issued to Four Hills LFO Permit Amendment #2000-04-A2, with the contested conditions.

Ms. Gehr's email on September 4, 2015 is the only notice in writing that Four Hills received regarding the administrative completeness of its application. While the Agency did not follow up to expressly state that the application was considered complete, the Agency implied as much.

The Agency neither objected to the information provided by Four Hills in response to that email, nor requested more information. Based on the Agency's assurance that submitting the information would complete the application, and in the absence of contrary evidence, the Court concludes that the application became administratively complete when Four Hills provided the requested information on September 8, 2015. The fact that the Agency followed up on October 30, 2015 to state that the draft permit was under review is a further undisputed confirmatory fact.

The Agency's claim that it "never deemed the application complete," is unconvincing, particularly since it had to determine the application was complete at some point in order to issue a permit. State's Opposition to Appellant's Mot. Summary Judgment (May 5, 2017). Because the Agency did not ask for further information from Four Hills after September 8, 2015, we conclude that the application was complete on that date, pursuant to 6 V.S.A. § 4851(c). Four Hills' permit amendment application was therefore deemed approved on or about November 10, 2015, without any conditions. Activities that occurred after that date are not relevant to this determination. For example, when the Agency informed Four Hills in April 2016 that it could not approve requests for permit amendments, the permit amendment had already been deemed approved.[4]

With no material facts in dispute, we answer Question 1 in the affirmative: AAFM's failure to issue a permit determination within 45 business days after Four Hills application became complete resulted in the permit amendment application being deemed approved.

II. **Whether AAFM has Authority to Condition a Deemed Approved Permit Without Justification, Notice, or a Hearing**

    a. *No "Permit Lite"*

The Agency appears to argue that it is has the authority to condition LFO permits that are deemed approved without justification, notice, or a hearing. The Agency bases this authority on its own regulations, the LFO Rules, which state: "A permit awarded by default can be amended,

---

[4] Also irrelevant to the matter before the Court is the Agency's enforcement action in 2015 against Four Hills that predated the deemed approval of the permit amendment. See Aff. of Nate Sands, ¶ 28. That enforcement action, which was related to Four Hills' failure to notify the Agency of plans to construct two new waste storage facilities, and subsequent deficiencies found in Four Hills' annual report and nutrient management plan, are enforcement matters outside the scope of the Court's review in this case.

conditioned, or revoked by the Secretary."[5] 2-3 Vt. Code R. § 403:5(B)(4)(f)(ii). The LFO Rules also allow the Agency to require permittees who are awarded permits by default to demonstrate compliance with various regulations and that "there will be no discharge to waters of the state and groundwater impacts will meet state groundwater quality standards." Id. at § 403:5(B)(4)(f)(i).

This distinction between permits awarded by default and other permits is unsupported by applicable law. A permit awarded based on Agency inaction is not a "permit lite," undeserving of the same vested rights and privileges that attend any other permit. Such an interpretation undermines the remedy for government inaction. The Agency seeks support for its distinction in Vermont Supreme Court decisions in which that Court, as noted above, has taken a conservative approach to deemed approval. But the decisions cited make no after-the-fact distinction between permits granted in the normal course, and those granted by deemed approval. The cited decisions simply caution that because permits granted by default may otherwise be illegal, the deemed approval remedy should only be applied in cases where doing so "clearly implements the statutory purpose." McEwing Servs., 2004 VT 53, ¶ 21, 177 Vt. 38 (citing In re Newton Enters., 167 Vt. 459, 465 (1998)). The Supreme Court advises caution when applying the remedy, not in how the permit is to be treated once it is deemed approved.

Because we disagree with the AAFM's reading of Supreme Court precedent in this matter, and because its interpretation would undermine the Legislature's remedy for agency inaction, we find AAFM does not have the authority to treat Four Hills' deemed approved permit amendment differently than other permits that it timely issues.

**b.** *Due Process for Existing Permits*

The Agency next argues that if Four Hills's application was deemed approved sometime before the Paper Permit was issued, it also has the authority to condition existing LFO permits without notice or a hearing based on state law and its LFO Rules. The Agency cites 6 V.S.A. § 4851(e), which gives the Secretary the authority to "condition or deny a permit on the basis of odor, noise, traffic, insects, flies, or other pests."

---

[5] According to the Agency, a permit awarded by default is synonymous with a permit awarded via deemed approval.

The Agency also cites Subchapter 8 of the LFO Rules, which gives the Secretary discretion "to amend an existing LFO permit on his or her own initiative." 2-3 Vt. Code R. § 403:8(A)(4). The provision lists six circumstances which may prompt such initiative, all of which require the Secretary to justify the action. Id. For example, if the farm does not adequately protect waters of the state, or is not properly managed, the Secretary may amend an existing LFO permit. Id. But the rule is open ended, in that the Secretary is "not limited to" acting under one of the six circumstances. Id.

Generally, courts defer to an administrative agency's interpretation "of statutory provisions that are within its particular area of expertise." In re Porter, 2012 VT 97, ¶ 8, 192 Vt. 601 (quoting In re Prof'l Nurses Serv., Inc., 164 Vt. 529, 532 (1996)). Absent a compelling indication of error, we are directed not to disturb a state agency's statutory interpretation. Prof'l Nurses Serv., 164 Vt. at 532.

Here, the state agency has clearly erred in its statutory interpretation. This Court fails to see how AAFM derived its seemingly limitless power to condition a permit based on 6 V.S.A. § 4851(e). "It is a fundamental rule of law that agencies cannot act beyond the authority conferred on them by statute." In re Petition of the Intervale Ctr., No. 89-5-08 Vtec, slip op. at 14 (Vt. Envtl. Ct. Feb. 24, 2009) (Durkin, J.) (citing Martin v. State of Vt. Agency of Transp. Dep't of Motor Vehicles, 2003 VT 14, ¶¶ 15-16, 175 Vt. 80). We are thus required to supply our own interpretation, with the primary goal of giving effect to the legislative intent. In re Village Associates Act 250 Land Use Permit, 2010 VT 42A, ¶ 9, 188 Vt. 113. In seeking out legislative intent, we first look to the statute's plain meaning. Id.

6 V.S.A. § 4851(e) gives the Agency the authority to "condition or deny" an LFO permit when it is evaluating a farm's permit request. In re Petition of the Intervale Ctr., No. 89-5-08 Vtec, slip op. at 15 (Vt. Envtl. Ct. Feb. 24, 2009) (Durkin, J.). This is not a retroactive power that can be used after a permit has been awarded. See id. Our interpretation is supported for two reasons. First, 6 V.S.A. § 4851(e), like § 4851(a)–(d) and (f), speaks to the Agency's authority in the context of a permit request, not authority after-the-fact when a permit has been issued. Second, the power to condition in this case is given in the same phrase as the power to deny; they are the two choices afforded the Agency at the same point in the permitting application process. The Agency can only deny a permit request; it cannot deny a permit that has already

been issued. That would require revocation. It is therefore reasonable to infer that the Legislature intended to limit the Agency's power to "condition" a permit to the context of reviewing and approving an application. The Legislature further limited the Agency's power by noting the exact bases on which to place conditions, or deny the permit, namely to control "odor, noise, traffic, insects, flies, or other pests." Intervale Ctr., No. 89-5-08 Vtec at 15–16 (Feb. 24, 2009); 6 V.S.A. § 4851(e).

A different part of the statute speaks to the Agency's authority to "revoke or condition coverage" under an LFO permit once it has been issued. 6 V.S.A. § 4994. As the Agency points out, this statute provides enforcement powers. Once a permit has been issued, the "Secretary may, after due notice and hearing, revoke or condition coverage under . . . an individual permit . . . when the person subject to the permit . . . fails to comply with a requirement of this chapter or any term, provision, or requirements of a permit . . . required by this chapter." This provision gives the Agency the power to condition or modify a permit when the law changes and the permit is no longer sufficient, or the permittee is violating the law or the terms of the permit.[6] But the Agency's determination to revoke or add conditions to an existing permit may only occur after notice and an opportunity to be heard is afforded the permittee. Id.

The Agency's interpretation of this enforcement statute, as it relates to § 4851(e), appears to be that the Secretary concedes that it must provide notice and a hearing to violators before conditioning their permits, but not to law-abiding permit holders. We find no statutory support for this interpretation. A wrongdoer should not be afforded more rights than a permittee following the law. Instead, the more rational interpretation is that the Legislature intended to give the Secretary the power to condition an existing permit only with cause, and only after giving the permittee due notice and the opportunity to be heard.

In this case, the Agency in September 2016 added conditions after-the-fact to Four Hills' valid permit amendment, without cause, notice, or a hearing. This administrative action had no

---

[6] Allowing the Agency to add conditions for cause makes sense given that LFO permits do not have expiration dates. It may be relevant to note here that the Legislature updated the regulations for Vermont farms in 2015 to improve water quality. See V.S.A. §§ 4810–10A, 4813–16. We do not consider these statutory amendments because they were enacted after Four Hills filed its most-recent permit amendment application.

legal foundation. We therefore conclude that the September 2016 AAFM permit determination is invalid. With no material facts in dispute, we can answer Question 2 in the affirmative.

Because we find that the September 2016 AAFM permit determination is invalid, we conclude that Questions 3 and 4, which relate to the conditions added, are moot.

### Conclusion

Four Hills' permit amendment application was deemed approved on or about November 10, 2015, which we calculate to be 45 business days after Four Hills submitted the information requested by the Agency to complete its application. The permit amendment that was issued by the Agency in September 2016 (#2000-04-A2) is invalid because it was issued after Four Hills's application was deemed complete, and because the September 2016 Amended Permit added conditions without cause, and without providing Four Hills with notice and an opportunity to be heard, as required under 6 V.S.A. § 4994. The Court therefore **GRANTS** Four Hills' motion for summary judgment and answers Questions 1 and 2 in the affirmative. Because of these outcomes, we conclude that Questions 3 and 4 are now moot. For all these same reasons, we **DENY** the Agency's motion for summary judgment and **VOID** LFO Permit Amendment #2000-04-02 that was issued by the Agency.

A Judgment Order accompanies this Decision. This concludes the current proceedings before this Court.


Electronically signed on August 22, 2017 at Burlington, Vermont, pursuant to V.R.E.F. 7(d).

_____
Thomas S. Durkin, Superior Judge