NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2020 VT 89

No. 2019-245

| | |
|---|---|
| In re ACTD LLC, d/b/a The Green Mountain Surgery Center | Supreme Court |
| | On Appeal from Green Mountain Care Board |
| | April Term, 2020 |

Kevin Mullin, Chair

Karen Tyler of Dunkiel Saunders Elliott Raubvogel & Hand, PLLC, Burlington, and Eric Citron and Daniel Woofter of Goldstein & Russell, P.C., Bethesda, Maryland, for Appellant.

Thomas J. Donovan, Jr., Attorney General, and Benjamin D. Battles, Solicitor General, Montpelier, for Appellee.

Daniel P. Richardson of Tarrant, Gillies & Richardson, Montpelier, for Amicus Curiae Vermont Education Health Initiative.

PRESENT: Reiber, C.J., Eaton, Carroll and Cohen, JJ., and Pearson, Supr. J. (Ret.), Specially Assigned

¶ 1. **EATON, J.** This appeal concerns a certificate of need (CON) granted by the Green Mountain Care Board to applicant ACTD, LLC, to operate the Green Mountain Surgery Center (GMSC), a for-profit multi-specialty ambulatory surgery center. During the CON application process, applicant indicated that it initially planned to offer surgical services in five identified specialties. After the CON was issued, applicant notified the Board that in addition to these five specialties, it planned to offer plastic surgery and ophthalmology procedures. The Board chose to review these changes and, after hearing, issued a decision clarifying that the original CON was limited in scope to the five specialties applicant had identified in its application and that the

proposed addition of plastic surgery and ophthalmology procedures was a nonmaterial change to the project. The Board concluded that applicant had demonstrated a need for greater access to plastic surgery and ophthalmology procedures currently performed in a hospital setting and approved the addition of these services. However, it rejected applicant's proposal to offer ophthalmology procedures already available at another ambulatory surgery center nearby. The Board also extended applicant's implementation reporting period for two additional years. Applicant argues that the Board improperly restricted the scope of the CON and lacked the power to extend the reporting requirement. We conclude that the Board acted within its authority and affirm.

I.

¶ 2.     We find it helpful to begin by explaining the statutory framework applicable to this case. Under Vermont law, hospitals and health care facilities are required to obtain a CON from the Board before developing "a new health care project." 18 V.S.A. § 9434(a). The statute defines "a new health care project" to include "[t]he construction, development, purchase, lease, or other establishment of an ambulatory surgical center." Id. § 9434(a)(6). The purpose of the CON requirement is to ensure that new health care projects are "developed in a manner that avoids unnecessary duplication and contains or reduces increases in the cost of delivering services, while at the same time maintaining and improving the quality of and access to health care services, and promoting rational allocation of health care resources in the State." Id. § 9431(a).

¶ 3.     To grant a CON, the Board must find that: the project is consistent with Vermont's Health Resource Allocation Plan; the cost of the project is reasonable because, among other reasons, the impact of the project on other health care providers' services, expenditures, and charges is outweighed by the benefit of the project to the public; "[t]here is an identifiable, existing, or reasonably anticipated need for the project that is appropriate for the applicant to provide"; the project will improve the quality of or provide greater access to health care for Vermonters; and the

2

project will serve the public good. Id. § 9437(1)-(4). It is the applicant's burden to show that these and other statutory criteria are satisfied. In re Cent. Vt. Med. Ctr., 174 Vt. 607, 611, 816 A.2d 531, 538 (2002); Green Mountain Care Board Rule 4.000, Certificate of Need, § 4.302(3), Code of Vt. Rules 80 280 004 [hereinafter Green Mountain Care Board Rule], http://www.lexisnexis.com/hottopics/codeofvtrules.

¶ 4. The Board has broad authority to administer the CON program. See 18 V.S.A. § 9433(a) (stating Board "shall exercise such duties and powers as necessary for the implementation of the certificate of need program"). The Board may issue a CON approving a proposed project "in whole or in part . . . subject to such conditions as the Board may impose." Id. § 9440(d)(4); Green Mountain Care Board Rule 4.500. The Board may revoke a CON for substantial noncompliance with the scope of the project as set forth in the application, or for failure to comply with conditions in the CON. 18 V.S.A. § 9444(a).

¶ 5. An applicant must notify the Board if it wishes to make changes to the project after a CON is issued. Id. § 9444(b). The Board must review material changes and has discretion to review nonmaterial changes. Id. We have held that the Board has the power to clarify an existing CON after it is issued. In re Prof'l Nurses Serv., Inc., 164 Vt. 529, 535, 671 A.2d 1289, 1293 (1996) [hereinafter Prof'l Nurses Serv. I]. A CON expires when the Board accepts the final implementation report filed in connection with the project. 18 V.S.A. § 9443(c).

II.

¶ 6. With the above framework in mind, we turn to the facts of this case. In June 2015, applicant filed a letter of intent with the Board stating that it planned to apply for a CON to open and operate GMSC, a multi-specialty ambulatory surgical center in Colchester. Applicant proposed that GMSC would provide elective surgeries for patients who did not require hospitalization and in cases in which the expected duration of medical services did not exceed twenty-four hours following admission. Applicant stated that GMSC's scope of service would

3

initially include gastroenterology, obstetrics and gynecology, pain medicine, general surgery, and orthopedics procedures.

¶ 7.    Applicant filed its CON application in July 2015. In the application, it reiterated that GMSC's initial scope of service would include gastroenterology, obstetrics and gynecology, pain medicine, general surgery, and orthopedics procedures. Applicant stated that it expected the majority of procedures to be diagnostic and screening colonoscopies and endoscopies. It anticipated that "once [GMSC] is up and running, there will be strong demand to provide operating and procedure room time for physicians working in other specialties, including orthopedics, gynecology, and plastic surgery." To demonstrate that the proposed project met the CON criteria, applicant provided projections of anticipated caseloads by physician and specialty in the five specialties above. Applicant also provided a list of the specific procedures it might offer in each of the five specialties. In its discussion of the various CON criteria, applicant focused primarily on the benefits of expanding access to colonoscopies and pain-management procedures. The application did not list ophthalmology as a potential future service it planned to offer.

¶ 8.    The Board subsequently requested and received extensive additional information from applicant regarding the CON criteria. In July 2016, GMSC provided the Board with an updated list of proposed procedures and surgeries by specialty. Ophthalmology and plastic surgery were not on the list. GMSC indicated again that the majority of its procedures would be gastrointestinal and pain-management procedures, with other procedures in orthopedics, general surgery, and gynecology, although it stated that GMSC planned to perform procedures beyond what it included in its projections. When asked by the Board to clarify this latter statement, applicant stated that once GMSC began operating, it was likely that other providers "such as dentists, oral surgeons, or podiatrists" might want to use the facility. However, applicant went on to state that "while we cannot predict with certainty the entire universe of procedures that will be

4

performed at the GMSC, we do have an expectation of what the initial procedures performed at [GMSC] will likely be," and provided a chart listing the five specialties above.

¶ 9. The Board granted GMSC a CON in July 2017. In its statement of decision, the Board found that the majority of surgeries at GMSC would be gastrointestinal procedures, most of which would be colonoscopies. It found that GMSC also planned to offer pain management, obstetrics and gynecology, orthopedic, and general surgery. The Board acknowledged that "applicant expects that once [GMSC] is fully operational, there will be a strong demand for other specialties which may include oral surgery, podiatry, and plastic surgery." It concluded that applicant met the required criteria for a CON, but that it would "impose conditions today that limit the expansion of services."

¶ 10. The CON included the following conditions relevant to this appeal. Condition 10 stated that "applicant shall not offer services, procedures or surgeries without first demonstrating to the Board that such services, procedures or surgeries are evidence-based and fall within the scope of those approved in this [CON]." Condition 22 required applicant to file regular implementation reports with the Board for four years after the date of the CON. Condition 26 required applicant to notify the Board immediately of a potential or actual nonmaterial or material change to the scope or cost of the project, and required the Board to "review the proposed change and advise the applicant whether the proposed change is subject to review." The CON also provided that "[t]he Board may, after notice and an opportunity to be heard, make such further orders as are necessary or desirable to accomplish the purposes of this [CON], and to ensure compliance with the terms and conditions of this [CON]." Applicant did not appeal the 2017 CON.

¶ 11. In September 2018, applicant notified the Board that it planned to add new physician-owners who would perform surgeries in other specialties besides those stated in the CON—namely, ophthalmology and plastic surgery. In response, the Board asked applicant to provide updated projections of the number and types of surgeries to be performed at GMSC.

5

Specifically, it asked applicant to demonstrate that there existed a need for ophthalmology surgeries that was not being met by existing hospitals or other facilities.

¶ 12. Applicant responded that retinal detachment and repair and oculoplastics procedures requiring the use of general anesthesia were currently only offered in a hospital setting, and were not offered by the Eye Surgery Center, the only other ambulatory surgery center in Vermont. Applicant stated that these procedures could be offered at a lower cost at an ambulatory surgery center. Applicant also asserted that there was a need for cataract surgeries that could be met by GMSC. Applicant argued that the Board had not imposed any conditions restricting the number of surgeons or the set of specialties to be offered at GMSC in the 2017 CON.

¶ 13. At a hearing in April 2019, applicant presented evidence in support of the additional services it proposed to offer at GMSC.[1] In June 2019, the Board issued the decision on appeal. The Board determined that the addition of plastic surgery and ophthalmology was a nonmaterial change to the project because these services would not have an annual operating expense of more than $500,000 or increase the approved project's total costs by more than ten percent. See 18 V.S.A. § 9432(11)-(12) (defining material and nonmaterial changes). However, it chose to exercise its discretion to review the change, as permitted by 18 V.S.A. § 9444(b)(2).

¶ 14. The Board found that applicant's proposed new plastic-surgery and ophthalmology services were not included in the scope of the 2017 CON, which it determined was limited to the five specialties of gastrointestinal surgery, obstetrics and gynecology, orthopedics, pain management, and general surgery. The Board noted that applicant had repeatedly stated that its initial scope of service included these five specialties and only provided projections for these five specialties. The Board explained that it had relied on applicant's projections in evaluating the

---

[1] At the hearing and in its 2019 decision, the Board also reviewed whether applicant had demonstrated that it had satisfied the conditions in the CON. The Board found that applicant had satisfied some conditions but not others, and was required to satisfy those conditions prior to opening for business. It also granted applicant's request to amend one of the conditions. These decisions are not at issue in this appeal.

project. It stated that if ophthalmology and plastic surgery had been included in those projections, the Board's analysis of the financial implications of, and need for, the project likely would have been different. Specifically, the Board would have had to consider the impact of the project on the Eye Surgery Center in South Burlington, the only other ambulatory surgery center in Vermont, because ophthalmology services are the only services it offers. It also would have had to analyze whether the Eye Surgery Center already served a need for lower-cost eye surgery services in the area. The Board agreed that it had acknowledged in the CON that GMSC might add specialties in the future, but found that this did not mean that the additional specialties fell within the scope of the approved project. It noted that despite having discussions with ophthalmologists as early as 2015, GMSC did not identify ophthalmology as a specialty for which there might be future demand. The Board found that it had clearly expressed its intent to limit the types of procedures offered at GMSC, as demonstrated by its statement that it was imposing conditions that limited the expansion of services, as well as Condition 10's prohibition against applicant offering services, surgeries, or procedures without first demonstrating that they fell within the scope of those approved in the CON.

¶ 15. The Board then considered whether applicant had demonstrated that the additional services met the applicable CON criteria. It concluded that applicant had shown that there was a need for additional plastic-surgery services, as well as ophthalmology services currently performed exclusively in a hospital setting. However, it found that applicant had not demonstrated a need to offer ophthalmological procedures that were currently available at the Eye Surgery Center, including cataract surgeries not requiring general anesthesia. It found that there was an absence of information in the record regarding the potential financial impact on the Eye Surgery Center if the Board were to allow applicant to perform such services.

¶ 16. The Board further determined that because the changes to the project since the CON was issued had affected GMSC's projected volumes, payer mix, and revenues, the Board would

7

require applicant to file semi-annual implementation reports for an additional two years after the initial reporting period. This appeal followed.

III.

¶ 17. Applicant claims the Board exceeded its authority in clarifying that the 2017 CON limited GMSC to offering the five specialties applicant identified in its application because the CON as issued was not specialty-based and imposing such a restriction long after the CON was issued was improper. Applicant argues that the 2017 CON allowed GMSC to offer any surgery that is appropriate for an ambulatory setting, so long as it was performed by properly licensed physicians. Further, applicant claims that if the Board can extend the reporting period at this late date, applicant will potentially be exposed to further extensions of the reporting period each time it seeks to add a specialty to its services.

¶ 18. In an appeal from a decision of the Board concerning a certificate of need, we apply an "extraordinarily narrow scope of review." In re Prof'l Nurses Serv., 2006 VT 112, ¶ 12, 180 Vt. 479, 913 A.2d 381 [hereinafter Prof'l Nurses Serv. II]. As discussed above, the Legislature has delegated broad authority to the Board to administer the CON program. See 18 V.S.A. § 9375(b)(8) (stating Board has duty to "[r]eview and approve, approve with conditions, or deny applications for certificates of need"); id. § 9433 (stating Board "shall exercise such duties and powers as necessary for the implementation of the certificate of need program as provided by and consistent with this subchapter," "shall issue or deny certificates of need and administer the program," and "shall adopt rules governing the review of certificate of need applications"); Prof'l Nurses Serv. II, 2006 VT 112, ¶ 12. Because the CON proceeding resembles a quasi-legislative proceeding, we give the Board's decision "the widest possible latitude on review." Prof'l Nurses Serv. II, 2006 VT 112, ¶ 15. Accordingly, decisions made within the expertise of the Board "are presumed correct, valid, and reasonable," and will not be overturned unless there is clear and convincing evidence to the contrary. Prof'l Nurses Serv. I, 164 Vt. at 532, 671 A.2d at 1291. The

8

Board's interpretation of the CON statutes and its own regulations will be upheld "absent a compelling indication of error," and its factual findings will be affirmed unless clearly erroneous. Prof'l Nurses Serv. II, 2006 VT 112, ¶ 13 (quotation omitted).[2]

¶ 19.    We begin by addressing whether the Board had the power to clarify that its previously issued CON limited the specialties GMSC could offer to those identified and discussed in the CON application.  We have no trouble in concluding that it did.  As we have previously recognized, "[t]he powers of an administrative agency must be construed to include such incidental, implied powers as may be needed for the agency to achieve the task assigned to it." Prof'l Nurses Serv. I, 164 Vt. at 534, 671 A.2d at 1293 (quotation omitted).  The CON statute requires an applicant to notify the Board if it wishes to make changes to the project after a CON is issued and authorizes the Board to review any proposed changes, even if those changes are considered to be nonmaterial.  18 V.S.A. § 9444(b).  Here, the Board chose to review applicant's proposed changes.  It needed to clarify the scope of the 2017 CON to determine if the proposed changes were within the scope of the project.  "[T]he power to clarify an existing CON is one of the implied powers necessary to carry out the Board's statutory authority."  Prof'l Nurses Serv. I, 164 Vt. at 535, 671 A.2d at 1293.  The Board therefore did not act outside of its authority when it found that the 2017 CON limited applicant to offering the five specialties identified in the CON application.

---

[2]    The CON program was previously administered by the Department of Banking, Insurance, Securities, and Health Care Administration (BISHCA).  See 18 V.S.A. § 9403, repealed by 2013, No. 79, § 52(e).  From 2011 to 2013, the Legislature gradually transferred administration of the CON program to the newly created Green Mountain Care Board.  See 2011, No. 48, § 3 (creating Board and giving it power to review decisions of BISHCA Commissioner regarding certificates of need); 2011, No. 171 (Adj. Sess.), § 12 (giving Board power to review, approve, or deny CON applications beginning in January 2013); 2013, No. 79, § 52(e) (repealing 18 V.S.A. § 9403).  Although the statutory scheme has changed, the role of the Board and the nature of the CON process are sufficiently similar to what they were when we issued our previous decisions in this area for us to apply the same standard of review.

¶ 20. Applicant argues, however, that the Board's interpretation of the 2017 CON was arbitrary and unreasonable because it was not supported by the administrative record or the language of the CON itself. We disagree. The record shows that applicant repeatedly told the Board that GMSC's initial scope of service would be to offer surgeries in the five specialties of gastroenterology, obstetrics and gynecology, pain medicine, general surgery, and orthopedics. It provided projections of revenue and anticipated procedures in these five specialties only. Although applicant indicated that it expected strong demand to expand the types of services offered by GMSC in the future, applicant did not provide information to show that the CON criteria were satisfied with respect to these future services.

¶ 21. Specifically, applicant never indicated to the Board that it intended to provide ophthalmology services at GMSC. While applicant referred to cataract surgery as an example of a surgery that is more efficient to provide in an ambulatory surgery center, it did not indicate that it actually planned to provide cataract surgery. It did not provide projections relating to anticipated ophthalmology services or analyze the impact such services might have on the Eye Surgery Center, the state's only other ambulatory surgery center, which exclusively provides ophthalmology services and is located near GMSC.[3] As the Board found, if applicant had included ophthalmology in its list of proposed services, the Board's analysis of the project would likely have been different because it would have had to consider the impact of GMSC's proposed services on the Eye Surgery Center and whether the Center was already meeting the need for lower-cost ophthalmology procedures in the area. See 18 V.S.A. § 9437(1)-(3) (requiring Board to consider impacts of proposed project on other providers as well as existing or anticipated need for proposed services).

---

[3] Applicant acknowledged in its application that the Eye Surgery Center was the only other provider of outpatient surgery in Vermont and claimed that the Eye Surgery Center "supports this application." The application also asserted that UVM Medical Center was not materially affected by the opening of the Eye Surgery Center. This appears to be the only mention of the Eye Surgery Center in the application or other materials provided by applicant prior to issuance of the CON.

¶ 22. The Board granted the CON based on applicant's representations in its application and the additional information it provided during the review process. The CON authorized applicant to develop and operate a multi-specialty ambulatory surgery center "in strict compliance with the Project scope as described in the application," other materials submitted by applicant, and the Board's accompanying statement of decision. Although the CON itself did not expressly state that GMSC was limited to providing procedures in the five specialties identified by applicant, the statement of decision found that the majority of surgeries during the first four years of operations would be gastrointestinal procedures, that GMSC would also offer pain-management, obstetrics and gynecology, orthopedics, and general surgery, and that all procedures that would be offered were currently performed at hospitals in Vermont. The statement of decision did not contemplate that GMSC would offer ophthalmology services. Based on this record, the Board reasonably concluded in the decision on appeal that the 2017 CON limited the scope of the project to five specialties, and that the addition of ophthalmology was a nonmaterial change to the project's scope.

¶ 23. Applicant argues that all of the parties to the original CON proceeding understood that GMSC would be an "unlimited" multi-specialty ambulatory surgery center. This argument is not supported by the record, which, as discussed above, shows that applicant represented that it initially planned to offer only five specialties. Although applicant indicated that at some point, it hoped to expand its offerings, it was not clear at the time of the CON application that applicant was requesting to offer the same breadth of services as a typical hospital, or seeking to add specialties as it wished, and applicant did not provide information to support such a request.[4] The

---

[4] A CON expires when an applicant files the final implementation report associated with the CON. 18 V.S.A. § 9443(c). A change to the project that occurs more than two years after the CON expires is not subject to Board review unless the change itself constitutes a new health care project as defined by statute. Id. § 9443(d). Thus, contrary to applicant's argument, it will not be subjected to unending rounds of regulatory proceedings if it eventually decides to add other specialties.

sole reference to an "unlimited" surgery center identified by applicant comes from a memorandum submitted by the Vermont Association of Hospitals and Health Systems, which warned about the negative impact such a facility might have on area hospitals. Applicant itself described the proposed plastic-surgery and ophthalmology services as a nonmaterial change to the project, which further undermines its argument that everyone understood the 2017 CON to be unlimited in terms of specialties.

¶ 24. We are unpersuaded by applicant's claim that it was unfair for the Board to limit the CON based on the initial projections applicant provided because applicant had made clear that it anticipated the addition of other services over time. It was applicant's burden to demonstrate that its project, as proposed, satisfied the CON criteria. In re Cent. Vt. Med. Ctr., 174 Vt. at 611, 816 A.2d at 538. The Board's determination that there was a need for the project was founded on applicant's detailed projections of its expected caseload by specialty in the five specialties it expected to offer. It was reasonable for the Board to interpret applicant's project as being limited to these five specialties, and to consider the addition of other specialties to be a change.

¶ 25. We are also unconvinced by applicant's argument that the Board misinterpreted Condition 10, which stated that "applicant shall not offer services, procedures or surgeries without first demonstrating to the Board that such services, procedures or surgeries are evidence-based and fall within the scope of those approved in this [CON]." Applicant argues that this condition simply requires that the offered services be appropriate for ambulatory care, and not that they be identified with a specific specialty. The requirement that additional services be "evidence-based" can be interpreted, as applicant argues, as addressing concerns regarding cost-effectiveness and medical safety. However, the Board interpreted the second requirement, that the services "fall within the scope of those approved," to limit applicant to the specialties that it proposed in its initial scope of services. As discussed above, in light of the administrative record, the Board's interpretation of this provision is not clearly incorrect or unreasonable.

¶ 26. Applicant also argues that Green Mountain Care Board Rule 4.500(5) required the Board to "specify in detail the services or parts of the proposed new health care project for which approval is given" when it issued the 2017 CON. Because the Board failed to expressly state in the CON that GMSC was limited to offering five specialties, applicant argues, it was error for the Board to later interpret the CON to include such a limitation. In support of its argument, applicant points to the 2007 CON granted to the Eye Surgery Center, which explicitly stated that the Center was limited to offering eye surgeries. The Board responds that Rule 4.500(5) does not apply where, as here, it approves the entire project proposed by an applicant. The Board further argues that applicant failed to preserve this argument by presenting it to the Board in the first instance.

¶ 27. We agree with the Board that applicant did not preserve this argument by failing to raise it below. Pratt v. Pallito, 2017 VT 22, ¶ 16, 204 Vt. 313, 167 A.3d 320 ("[T]o properly preserve an issue, a party must present the issue to the administrative agency with specificity and clarity in a manner which gives the agency a fair opportunity to rule on it." (quotation and alteration omitted)). Applicant argues that it had no chance to do so, because the Board did not provide it with a proposed version of its 2019 decision and opportunity to file exceptions, as required by 18 V.S.A. § 9440(d)(5).[5] Even assuming this provision applies to Board decisions other than those denying applications in whole or part or granting contested CON applications in the first instance, the record belies applicant's claim that it had no opportunity to raise the argument before the Board. Applicant filed a lengthy post-hearing memorandum in which it made most of the claims

---

[5] Section 9440(d)(5) of Title 18 provides:

> If the Board proposes to render a final decision denying an application in whole or in part, or approving a contested application, the Board shall serve the parties with notice of a proposed decision containing proposed findings of fact and conclusions of law, and shall provide the parties an opportunity to file exceptions and present briefs and oral argument to the Board. The Board may also permit the parties to present additional evidence.

it now raises on appeal, including that the proposed additional services fell within the scope of the CON and that the CON did not contain specific language limiting GMSC to certain specialties. However, applicant never complained that the Board had not complied with Rule 4.500(5) or even mentioned that rule. We therefore decline to address this issue, which involves an agency's interpretation of its own rules, for the first time on appeal. Pratt, 2017 VT 22, ¶ 16.

¶ 28. As a general matter, applicant contends that the Board's decision should be reversed because applicant has invested significant resources in reliance on its understanding that the CON permitted it to offer surgeries in any specialty. While the doctrine of equitable estoppel may be applied against the government, see In re Lyon, 2005 VT 63, ¶ 16, 178 Vt. 232, 882 A.2d 1143, applicant has made no attempt to demonstrate that the elements of equitable estoppel are satisfied here. See id. ¶ 17. Moreover, applicant's argument that it always believed that the 2017 CON permitted it to offer any specialty is difficult to square with applicant's own representation to the Board that the addition of plastic surgery and ophthalmology was a change to the scope of the project. This argument is therefore unavailing.

¶ 29. Finally, we reject applicant's claim that the Board lacked authority to extend GMSC's reporting period for an additional two years. When issuing a CON, the Board has the power to impose any conditions that it finds are necessary to further the purpose of the statute. 18 V.S.A. § 9440(d)(4) (stating Board may approve CON "subject to such conditions as the Board may impose in furtherance of the purposes of this subchapter"). One of the conditions contemplated by the statute is that applicants are required to file implementation reports to ensure compliance with the CON and applicable law. See id. § 9443 (stating that CON expires on date Board accepts final implementation report). The Board also has the authority to review, approve, or deny any changes to a CON. Id. § 9444(b). We agree with the Board that these statutes together imply a further power to impose new or amended conditions, if necessary, when the Board reviews

14

and approves a change to a previously issued CON.[6]  See Prof'l Nurses Serv. I, 164 Vt. at 534, 671 A.2d at 1293 ("The powers of an administrative agency must be construed to include such incidental, implied powers as may be needed for the agency to achieve the task assigned to it." (quotation omitted)); Green Mountain Care Board Rule 4.600(4) (providing that if Board approves change, Board shall amend CON to that effect).  To hold otherwise would hamper the Board's ability to enforce the CON and its conditions.  See 18 V.S.A. § 9444(a) (stating Board may revoke CON for substantial noncompliance with scope of project as designated in application or failure to comply with conditions).  The CON itself warned applicant that the Board could, after notice and an opportunity to be heard, "make such further orders as are necessary or desirable" to further the purpose of the CON and ensure compliance with its terms and conditions.  Here, the Board determined that an extended reporting period was necessary because many important aspects of the project had changed since the CON was issued, including the scope of the specialties offered.  The Board's decision was not irrational or arbitrary, and we therefore decline to disturb it.  See Prof'l Nurses Serv. I, 164 Vt. at 532, 671 A.2d at 1291.

Affirmed.

FOR THE COURT:

_____

Associate Justice

---

[6]  Applicant argues that the Board lacks open-ended authority to change a permit, citing this Court's decisions in In re Mathez Act 250 LU Permit, 2018 VT 55, ¶ 14, 207 Vt. 537, 192 A.3d 400, and In re Treetop Dev. Co. Act 250 Dev., 2016 VT 20, ¶ 14, 201 Vt. 532, 143 A.3d 1086.  These cases involved decisions by district commissions to change or enforce Act 250 land-use permits after they were issued and are unhelpful to applicant because the nature of this proceeding and the scope of the Board's statutory authority are significantly different.  The CON proceeding is akin to a quasi-legislative process and, unlike Act 250 proceedings, is not governed by the Administrative Procedure Act.  See 18 V.S.A. § 9440(a) (exempting CON proceeding from APA); Prof'l Nurses Serv. II, 2006 VT 112, ¶ 14.  Importantly, unlike the district commission, the Board has authority to review proposed changes to a CON project and, impliedly, to issue orders necessary to ensure compliance with the CON statute and rules and the CON itself.  18 V.S.A. § 9444(b).